with thanks to all parties. That takes us to our fifth argument of the morning. It's in the United States v. Jerry Peoples, Appeal No. 23-2847. Hold on one second. Okay, good morning. Go right ahead. Good morning, and may it please the Court. My name is Matthew Shibari, and I represent the appellant, Mr. Jerry Peoples, in this case. I respectfully request to reserve the last two minutes of my allotted time for rebuttal, if I have them to reserve. Your Honors, a primary issue common to both counts on which Mr. Peoples was convicted is whether the government proved beyond a reasonable doubt, even when considering the evidence in the light most favorable to the government, that the purported victim intended a target of the alleged attempt to robbery, Alisa Lem, was involved in the distribution of marijuana. That is, whether the government met their burden under the interstate commerce element of both counts. In fact, the record evidence demonstrates that the government failed in this regard. They failed to meet their burden on this element in both counts. And the District Court subsequently erred in its denial of Mr. Peoples' motion for acquittal, for which reason we ask that this Court vacate his conviction and sentence or, in the alternative, remand for a new trial. Your Honors, the U.S. Supreme Court's 2016 decision in Taylor does most of the work for us in this case. In this Court's decisions, in Bailey in particular, as well as Harris and Raman do the rest. A factual... Mr. Shabari, how do you get around the evidence that came in from Mr. Salem, the victim, his own testimony that both he and Hanny had previously provided the defendant with marijuana, that he gave the defendant a sample of marijuana on the evening of June 13th, that he went to jail for pseudo-federal involvement in response to a question about were you a drug dealer? How do you get around that evidence? Again, at this stage, viewing it in the light most favorable to the government. I think that's the most important question. The amounts that were provided to Mr. Peoples from Mr. Salem based on his own testimony were very small amounts for personal use. One or two ounces, if I recall, Mr. Salem's testimony in particular, on only a couple of occasions. Is there anything in the law that has a threshold requirement of amounts that have to be involved in order to qualify under Taylor? No, Your Honor, not to my knowledge. Based on my research, I don't think that there's a specific quantitative amount that's reflected as a threshold in that regard. However, I do believe there is a distinction in the case law between a purported drug dealer and someone who possesses an amount of marijuana specifically for personal use. And I think the... So it's your argument that the marijuana that Salem gave to your client was Salem's user quantity and he was sharing it with a friend? That's what the testimony trial and the record evidence shows. There is no evidence presented that he had any other amounts that he distributed to any other individuals or gave Mr. Peoples on any other occasions any amounts in excess of that. And if that... And these are not just semantics, but what is at issue is the operational definition of a drug dealer under federal law. Hold on, hold on. I thought there was ample evidence that the target of... the intended target of the large load of marijuana was not Salem. The evidence permitted the jury to find that the idea or the plot was to follow Salem back to his supplier. And that supplier, the jury could have found, or that's the argument you're going to hear from the other side, is that supplier is a drug dealer and that supplier, at least the defendants believed, would have a meaningful load of marijuana. So there's no record evidence that that purported supplier had any larger amount or was themselves a drug dealer. Only a reference from Mr. Salem himself that his marijuana was obtained from Mr. Hani. But isn't that just the fruit of the... It never came to be, right? There was an arrest before that, right? So we don't know. I mean, I think you're right about that, but why does that lead to an insufficiency of proof with respect to conspiracy or attempt? I believe that supports insufficiency because the case law specifically, and the language in the case law specifically denotes, and we're talking about marijuana, a marijuana dealer. And that is distinguishable from someone who just happens to possess an amount. So your argument is that... Your argument, I just want to make sure I get it, is we should focus on Salem and Salem alone. And Salem alone is not a drug dealer. I believe Salem alone, based on the record evidence, is not a drug dealer. Okay, and are you telling us don't focus on anyone other than Salem? I don't believe this court needs to hide or not consider any of the other record evidence. There was no additional record evidence, no testimony that the government investigated, looked any deeper into Mr. Salem's background. There was no other testimony. But Mr. Salem testified about he and his supplier, Hany, Hany, Hany, previously providing marijuana to Mr. Peoples. That's correct. And those amounts, though, were, again, one or two ounces, personal use. And even the amount that was found by law enforcement when they caught up with him. If you're selling personal use, though, why does that preclude you from being a drug dealer? We say distribution of small quantities for use are sufficient to convict you of distributing narcotics. So if you could be convicted of a drug dealer distributing narcotics with small amounts, why isn't that sufficient for this? I'm not trying to circumvent that ruling. I think what's unique here is that Mr. Salem was Mr. Peoples' friend for a number of years. This wasn't an individual. Their relationship was not based on... But he's engaged in marijuana transactions with him. They might be for personal use, but I don't know how that, under the law and under Taylor, why that would matter. I think it also matters under Taylor specifically because Mr. Salem never purported himself to Mr. Peoples, or anyone else for that matter, that he was in the business of selling drugs. It was that he happened to have some. In fact, his primary profession was the manager of a store. Well, if you look at the wiretaps, though, there's more than sufficient evidence that the defendant here thought Peoples and Hanney were dealing drugs. That's why they wanted to rob them. That's what they're talking about in all the wiretaps. Mr. Peoples, I think any of the inferences drawn from the recorded conversations, and these are specifically those during the final car chase, again, don't reference, make very general references to the amounts. But again, I think the case law draws an important distinction between targets that are either known, documented, or purport themselves to be drug dealers versus those that are more like Mr. Salem who happens to have that. If that were the case, then anyone that has any amount, regardless of the specific amount of marijuana, and shares, sells, or offers to another, is under that definition, a very broadened definition, a drug dealer. So I think, and tell me I'm not hearing this right, I think your argument is, at least what I'm hearing you say, is that the only possible conclusion the jury could have reached from the wiretaps and from everything they heard is that the ultimate target of the robbery was Salem, that there was no intention whatsoever to rob anyone other than him. That's not our position, but even Hani, again, there is no testimony from him or anyone else to support that. What about the testimony that they were going to, in the wiretap calls, that they were going to follow Salem back to his drug dealer? Why isn't that sufficient? That's testimony that was certainly in front of the jury and could allow that inference, but this court's decision, and Rahman in particular, does not require that there be no evidence of guilt. But why isn't that sufficient at the stage we're at on appeal where we have to view everything in the light most favorable to the government? I understand you're making the best of what you have here, but I want to make sure I understand your argument. Those represent a few of the elements of the counts. The interstate commerce element is also a separate important element in the case law, and the facts involved in those cases identify known drug dealers with extensive drug dealings and facts that distinguish the purported targets in those cases, Taylor and its progeny, from Salem or Hani, either one in this case. They're distinguishable in that regard. That brings a natural, organic focus to the interstate commerce element, and based on the case law, distinguishes Hani and Mr. Salem from those. Okay, we'll give you a minute of rebuttal. Sorry, we asked you a lot of questions. Thank you, Your Honor. Okay, let's hear from the government. Good morning, and may it please the court. My name is Megan Donahue, and I represent the United States. This court should affirm defendant's convictions. The district court properly denied defendant's Rule 29 motion on both the conspiracy and attempted robbery counts. There was ample evidence that defendant conspired to rob and attempted to rob Salem and Salem's drug supplier, and that evidence was plainly sufficient to support the jury's guilty verdicts. I want to start by turning to the focus on interstate commerce that was just addressed. The defense suggests that Salem was not a drug dealer, and therefore that the interstate commerce element is not met. However, the evidence was that Salem did distribute marijuana. He had distributed it to defendant before. He distributed it to defendant on June 13th. How do you respond to the argument that he distributed it, but it was just user quantity, so that doesn't count? Your Honor, the amount, as you indicated in your question, is irrelevant. This court has made clear and the Supreme Court has made clear under Taylor that there is no minimum quantity requirement to satisfy the interstate commerce element. However, what I think is most important here and what a lot of the focus of the defendant's argument is is that the plan here was not to rob Salem of a personal quantity of marijuana. The plan, as indicated in multiple wire calls throughout the day on June 13th, was to meet Salem to obtain a sample and then to follow him back to the stash house where peoples believed that Salem and his supplier had more marijuana as well as drug proceeds. The ultimate target here— A lot more. Enough to buy buildings. Correct, Your Honor. The ultimate target here was not Salem. It was the supplier. And what's the best argument that the supplier was actually engaged in drug transactions? The best argument and evidence, Your Honor, is the references in the calls. It is entirely clear that defendant and his co-conspirators believed that this supplier was in possession of a massive quantity of both drugs and drug proceeds. Specifically, looking at Government Exhibits 3A and 3B, we grab him—I guarantee you we grab him and we tell him, Look, man, we need 500 of them things, 200,000, fool. We can have that shit on my mama, boy. I know for a fact, I know for a fact we're going to get more than that. Again, from Government Exhibits 3A and 3B. In the morning, bro, we can have it all. All the money and everything. So before Father's Day, we can have all that shit. Again, from Government Exhibits 4A and 4B. We ain't never going to have to shit again, fool. We buy in buildings after buildings, I swear to God. But see, the only thing we need to do is move fast before somebody beat us to it. The target of defendant's robbery plan was clear. It was not to obtain one or two ounces from Salem. It was to follow Salem back to his supplier to rob them of both drugs and money. Would it have been sufficient for interstate commerce if it was just Salem? As long as defendant was targeting Salem for drugs and drug proceeds, which the government argues that he was, it would have, Your Honor. This court has held that, again, that there's no minimum requirement of drugs that needs to be involved. This court has further held that if a robber is targeting drugs or drug proceeds, that is enough to affect interstate commerce. And that even if it is purely interstate activity, that the sale of drugs or the distribution of drugs is activity that in the aggregate affects interstate commerce. So thereby, if defendant was just targeting Salem, the government would argue that the interstate commerce element would still be satisfied. However, we don't need to cross that bridge because in this case, his plan was much larger than that. Again, the evidence proved both that the conspiracy existed and that defendant knowingly became a member of that conspiracy with the intent to advance it. This robbery was defendant's idea. He proposed it. He recruited others. He planned the details, and he took multiple steps throughout the day to execute it. The multiple phone calls, the telephone records, and the physical surveillance all established defendant's intentions and actions throughout the day. Again, these multiple statements on the calls make his plan clear. Statements such as, I fit in to take these boys down. Somebody else is going to beat me to it from government exhibit 3A and 3B. I'll get rid of his ass anyway. Me personally. I'll whack his ass anyway. Government exhibits 3A and 3B. I promise that when I go and meet him and then I know where he's coming from next, so when I follow him, I know where he's coming from with the shit. Government exhibits 3A and 3B. I'm really thinking grabbing it, grabbing it. You make him cough that shit up and still get rid of his ass. Still get rid of his ass. Stani, I've got a factual question for you that's irrelevant to the issue on appeal, but when did the 924C charge drop out of the case? When was it clear that wasn't going to trial? Your Honor, I believe the 924C, as to defendant, I believe it was dropped at different points as to the various defendants, but with respect to this particular defendant, I believe it was dropped at defendant's sentencing hearing, so not until following the trial. But it was clear it never went to trial, and it wasn't dropped after opening arguments or this or that witness or something like that? It was not, Your Honor, but the government only proceeded to trial on counts one and two as to defendant. Okay, and that was clear to the defendant? It was, Your Honor. Were the wiretaps produced in discovery? They were, Your Honor. And he chose to go to trial? He did. He did. The three co-defendants pled guilty and did not proceed to trial, but defendant Peoples proceeded to trial. In addition to the calls, the jury also heard from law enforcement officers about how consistent with the plans set out in the calls, defendant and his co-conspirators met in person to continue planning the robbery. Law enforcement officers testified how they conducted a traffic stop to try and dissuade defendant from following through with the robbery, that defendant and his co-conspirators regrouped and switched cars. Defendant then met with Salem, obtained the sample, and followed Salem, and the co-conspirators went to pick up Blackwell and two loaded firearms before heading towards defendant and Salem. Additional calls then showed that defendant followed Salem back to where he believed Salem and Salem's supplier kept additional marijuana and drug proceeds. And perhaps most tellingly, while following Salem, defendant continued to call Everett and provide real-time updates regarding his and Salem's location so that Everett and the co-defendants could catch up to them to effectuate the robbery. With respect to the attempted Hobbs Act robbery count, the government also presented sufficient evidence from which a jury could reasonably find the defendant attempted to rob Salem and Salem's drug supplier. Again, taking the evidence in the light most favorable to the government, the same evidence establishing defendant's knowing participation in the conspiracy proved that defendant knowingly took substantial steps toward the robbery with the intent to commit that robbery. His own words on the calls, as well as the co-conspirators' words, make it clear that defendant both believed Salem and his supplier had drugs and money and that he believed they would part with that drugs and money as a result of the robbery. Although defendant's plan was eventually foiled by law enforcement, that does not negate the crime or the interstate commerce element of the crime. There is no doubt looking at the evidence presented in this case as to what defendant believed and what his plan was that day, and that was to rob Salem and Salem's supplier of their marijuana and drug proceeds. If there are no further questions, I ask this court to affirm defendant's convictions. Thank you. Ms. Donahue, thanks to you. Mr. Ciavarri, yeah, we'll give you a minute. Thank you, Your Honors. I'll try to be brief. I know I'm on borrowed time. Mr. Ciavarri, can I clarify one thing, and I meant to ask it earlier? Are you appealing the Rule 33 ruling of the district court for a new trial? I know you're appealing sufficiency, but are you appealing the new trial denial as well? Yes, although we acknowledge that the post-trial motions reference the argument for the Motion 29, and the two issues pertaining to the Rule 33 mentioned in our opening brief were not developed differently. So I'll leave it at that. Okay. Thank you. The focus has been on what Mr. Peoples, the defendant, believed. This court in U.S. v. Bailey reasoned specifically that the defendant in that case had formed a specific intent to rob a cocaine dealer, the evidence showing that he took a significant step toward robbing a cocaine dealer by taking money from someone who was identified to him as a drug dealer. I think that exemplifies this distinction between someone who presents as a drug dealer versus someone who happens to have an amount. And again, a distinguishing fact, of course, between Bailey in this case is the cocaine versus marijuana. There is no evidence, despite any inferences of what Mr. Peoples believed, that Mr. Solem's purported supplier had any amount, certainly any amount more, that would substantiate enough to buy buildings, as Your Honors pointed out. The ramblings about $500,000 and $200,000 are not supported by any evidence, any record evidence that anyone purported that either Mr. Solem or Mr. Hani had any amounts other than their personal amounts that were shared. For that reason, we request that you vacate his conviction and sentence and or remand for a new trial. Okay, Mr. Shabari, thank you very much. Do I see correctly here you took this case on appointment from the court, right? That's correct, Your Honor. Yeah, we very much appreciate you doing that. Your service to Mr. Peoples and to the court with your briefing and argument. We'll take the appeal under advisement with thanks to the government as well. Thank you, Your Honor.